**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> GEOFFREY SCOTT GAFFNEY, <br><br> Defendant. | No. 13-CR-2035-LRR <br><br> **ORDER** |

_____

**TABLE OF CONTENTS**

*I.  INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.  RELEVANT PROCEDURAL HISTORY.* . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.  STANDARD OF REVIEW.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*IV.  RELEVANT FACTUAL BACKGROUND.* . . . . . . . . . . . . . . . . . . . . . . . *3*

*V. ANALYSIS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
     *A. Basis for Vehicle Stop.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
          *1.  Legal standard.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
          *2.  Hearing evidence.* . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
          *3.  Application.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
    *B. Length of Vehicle Stop.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*
    *C. Pat-Down.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*
          *1.  Reasonable suspicion that Defendant was armed and
              dangerous.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*
          *2.  Immediately apparent that object was contraband.* . . . . . . . . *14*

*VI.  CONCLUSION..* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *15*

## I. INTRODUCTION

The matter before the court is Defendant Geoffrey Scott Gaffney's Objections ("Objections") (docket no. 42) to United States Magistrate Judge Jon S. Scoles's Report and Recommendation (docket no. 34), which recommends that the court deny Defendant's "Motion to Suppress" ("Motion") (docket no. 21).

## II. RELEVANT PROCEDURAL HISTORY

On November 5, 2013, a grand jury returned an Indictment (docket no. 2) that charged Defendant with possessing with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). On December 19, 2013, Defendant filed the Motion. On December 30, 2013, the government filed a Resistance (docket no. 30). On January 3, 2014, Judge Scoles held a hearing on the Motion. *See* January 3, 2014 Minute Entry (docket no. 32). Defendant appeared in court with his attorney, Jill Johnston. Assistant United States Attorney Dan Chatham and Special Assistant United States Attorney Ravi Narayan represented the government. On January 8, 2014, Judge Scoles issued his Report and Recommendation, which recommends that the court deny the Motion. On January 29, 2014, Defendant filed his Objections. The Objections and Report and Recommendation are fully submitted and ready for decision.

## III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake[] a de novo review of the disputed portions of a

magistrate judge's report and recommendations"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the court reviews the disputed portions of the Report and Recommendation de novo.

## IV. RELEVANT FACTUAL BACKGROUND[1]

On August 21, 2013, at approximately 12:24 a.m., Officer Albert Bovy of the Waterloo, Iowa Police Department was stopped at a stop light facing west on Franklin Street in Waterloo when he observed a car approaching him from the west. The speed limit on Franklin Street is 35 miles per hour, and Officer Bovy thought that the vehicle was traveling between 50 and 55 miles per hour. After the vehicle passed, Officer Bovy made a u-turn to follow the vehicle. As the vehicle was turning right at the next intersection onto Rhey Street, Officer Bovy turned on his emergency lights. Defendant was the driver and sole occupant of the vehicle, and he stopped the vehicle on Rhey Street.

Officer Bovy approached the vehicle and, at Officer Bovy's request, Defendant produced his driver's license and insurance card. Officer Bovy returned to his vehicle and received information from dispatch that Defendant had a valid driver's license, there were no outstanding warrants for Defendant's arrest and that Defendant had a previous narcotics history. Officer Bovy was later notified over the radio by Officer Gann that he had

---

[1] After reviewing the hearing transcript, the court finds that Judge Scoles accurately and thoroughly set forth the relevant facts in the Report and Recommendation. *See* Report and Recommendation at 2-6. Accordingly, the court only briefly summarizes the facts. When relevant, the court relies on and discusses additional facts in conjunction with its analysis of the law.

3

information that Defendant was still involved in illegal narcotics activity. During the course of the stop, Officer Bovy asked Defendant where he was going. Officer Bovy testified that Defendant gave inconsistent answers—he first stated that he was going to a friend's house but later stated that he was going to a convenience store to purchase sandwich meat. Officer Bovy asked Defendant if he had weapons in the car, and Defendant replied that he did not. Officer Bovy then asked Defendant whether he would give consent to search the vehicle, and Defendant denied consent.

Officer Bovy, who has been a canine officer since 2007, then instructed Defendant to step out of the car so that Officer Bovy's canine could conduct a sniff of the vehicle.[2] Once Defendant was outside the vehicle, Officer Bovy patted down Defendant for weapons. Officer Bovy felt a long, round object with a bulb at the end. Officer Bovy testified that the "only object I have ever felt on a person that feels like that is a meth or crack pipe." Hearing on Motion to Suppress Transcript (docket no. 37) at 24. Officer Bovy asked Defendant what was in his pocket, to which Defendant replied that there was nothing in his pocket. Officer Bovy stated to Defendant that whatever was in Defendant's pocket felt exactly like a glass meth pipe, to which Defendant replied that it was not his. Office Bovy proceeded to handcuff Defendant and removed a meth pipe from Defendant's pocket.

Because Defendant had been arrested and the police intended to tow Defendant's vehicle, another officer performed an inventory search of the vehicle. The officer discovered approximately four pounds of ice methamphetamine in the trunk of the vehicle.

---

[2] Because Officer Bovy found the meth pipe and decided to conduct an inventory search prior to towing Defendant's vehicle, Officer Bovy did not end up actually having his canine sniff the vehicle.

## V. ANALYSIS

Defendant objects to certain facts set forth in the Report and Recommendation, including "that Defendant said [Officer Bovy] 'thought [Defendant] was only going in the 40s'; that Defendant gave inconsistent accounts of where he was going prior to being stopped; and that Defendant made any statements at all regarding the meth pipe or that he had started using methamphetamine again." Objections at 1 (citations omitted) (quoting Report and Recommendation at 3). Defendant also objects to Judge Scoles's conclusions "that probable cause existed for the stopping of Defendant's vehicle[;] . . . that the vehicle stop was not unduly prolonged[;] . . . [and] that Officer Bovy conducted a lawful pat-down and that the seizure of the meth pipe was valid." *Id.* at 2-6.

The court will first address the lawfulness of the vehicle stop. The court will then turn to the length of the vehicle stop. Finally, the court will turn to the pat-down of Defendant. The court will address Defendant's factual objections where appropriate.

### A. Basis for Vehicle Stop

Defendant first argues that Officer Bovy did not have probable cause to believe that Defendant was speeding. Specifically, Defendant argues that the totality of the circumstances does not establish that Officer Bovy reasonably believed that Defendant was speeding.

#### 1. Legal standard

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. "A traffic stop constitutes a seizure of [a] vehicle's occupants, including any passengers." *United States v. Hollins*, 685 F.3d 703, 705 (8th Cir. 2012) (quoting *United States v. Sanchez*, 572 F.3d 475, 478 (8th Cir. 2009)). To be constitutional, a "traffic stop 'must be supported by reasonable suspicion or probable cause.'" *Id.* at 706 (quoting *United States v. Houston*, 548 F.3d 1151, 1153 (8th Cir. 2008)). An officer has probable cause to make a traffic stop when the officer "objectively

5

has a reasonable basis for believing that the driver has breached a traffic law." *United States v. Gordon*, ___ F.3d ___, ___, 2013 WL 6726850, at *3 (8th Cir. 2013) (quoting *United States v. Coney*, 456 F.3d 850, 856 (8th Cir. 2006)) (internal quotation marks omitted). Whether an officer has probable cause "is determined from 'the totality of the circumstances as set forth in the information available to the arresting officer[] at the time of the arrest.'" *Houston*, 548 F.3d at 1154 (quoting *United States v. Adams*, 346 F.3d 1165, 1169 (8th Cir. 2003)). Moreover, "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Davenpeck v. Alford*, 543 U.S. 146, 153 (2004). An officer has reasonable suspicion justifying a traffic stop when the officer "is aware of 'particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed.'" *Houston*, 548 F.3d at 1154. (quoting *United States v. Martin*, 706 F.2d 263, 265 (8th Cir. 1983)).

As Judge Scoles explained, whether an officer's uncorroborated visual estimate of speed is sufficient to establish probable cause to initiate a traffic stop appears to be an open question in the Eighth Circuit. The Fourth Circuit addressed this question and held that "at a minimum there must be sufficient indicia of reliability for a court to credit as reasonable an officer's visual estimate of speed." *United States v. Sowards*, 690 F.3d 583, 591 (4th Cir. 2012). The *Sowards* court also drew a distinction based on the officer's estimate of the speed of a vehicle in holding that "where an officer estimates that a vehicle is traveling in significant excess of the legal speed limit, the speed differential—i.e., the percentage difference between the estimated speed and the legal speed limit—may itself provide sufficient 'indicia of reliability' to support an officer's probable cause determination." *Id.* at 591. However, the *Sowards* court went on to state that "additional indicia of reliability" are necessary to support a probable cause determination "where an

6

officer estimates that a vehicle is traveling in only slight excess of the legal speed limit."
*Id.* at 592.

### 2. *Hearing evidence*

Officer Bovy testified that he received training in identifying the speed of vehicles in 2002. As a part of this training, Officer Bovy testified that he was required to make "30 to 50" visual estimates of a vehicle's speed, though the record lacks evidence about how accurately an officer must estimate speeds to pass the training exercise. Hearing on Motion to Suppress Transcript at 53. While Officer Bovy testified that he has issued "thousands" of traffic citations over the course of his decade at the Waterloo Police Department, he also testified that he does not "do much in the way of speed violations" and that he does not believe he has ever even turned on his in-car radar. *Id.* at 10, 12. Officer Bovy testified that he estimated that the vehicle was traveling "at 50 to 55 mile[s] an hour, which is well over the speed limit, posted speed limit, in that area, which is 35." *Id.* at 13. Officer Bovy based his estimate "by the amount of distance [the vehicle] was covering in that short area . . . based on [his] experience, having conducted traffic stops before." *Id.* at 30. Officer Bovy did not "know what the actual distance" was that the vehicle traveled before it was even with Officer Bovy's vehicle. *Id.* at 39. Officer Bovy also testified that after he stopped the vehicle, Defendant stated that he "was only going in the 40's."[3] *Id.* at 54.

The parties also presented dash-camera video from Officer Bovy's vehicle, which was admitted into evidence at the suppression hearing as Defense Exhibit A. The video

---

[3] Defendant objects to this fact because, as a result of Officer Bovy apparently inadvertently switching off his microphone, there is no audio recording of the conversation between Officer Bovy and Defendant and because Officer Bovy may not have completed his report of the conversation until days after the incident. *See* Objections at 1-2. In considering whether Officer Bovy's belief that Defendant was speeding was objectively reasonable, the court will not consider this conversation between Defendant and Officer Bovy.

7

shows that Defendant's vehicle took approximately nine seconds from when it first came into Officer Bovy's view to when it crossed his position. Tina Debban, an investigator from the Federal Public Defender's office, used a measuring wheel to determine that Defendant's vehicle traveled approximately 473 feet over those nine seconds. A vehicle that travels 473 feet in nine seconds travels an average speed of 35.8 miles per hour.

  3. *Application*

  The court agrees with Judge Scoles that, while this case presents a close question, the totality of the circumstances establishes the reasonableness of Officer Bovy's belief that Defendant was speeding as he approached the intersection. The court does not place a great deal of confidence in Officer Bovy's estimation of the speed of Defendant's vehicle. While the government points out that Officer Bovy has issued thousands of traffic citations over the course of his career, the record reflects that Officer Bovy only rarely issues speeding citations, and he testified that he is unsure whether he has actually ever turned on his in-car radar. Officer Bovy insisted that his estimate was based on his experience having conducted traffic stops, but the record makes clear that his experience with traffic stops is unrelated to speeding violations. Officer Bovy was unable to even provide an estimated distance that Defendant's vehicle traveled. Moreover, Officer Bovy's estimate of the speed of Defendant's vehicle at 50 to 55 miles per hour differed substantially from Defendant's calculation of an average of 35.8 miles per hour over 473 feet.[4]

---

[4] Of course, this is only an average speed. Thus, Defendant may have been going significantly faster than the average speed of 35.8 miles per hour at some point during the nine seconds shown on the video. However, it is unlikely that Defendant was traveling between 50 to 55 miles per hour. If one assumes that Defendant was traveling at 50 miles per hour for a three second period, Defendant would have covered 220 feet. This would mean that Defendant covered the remaining 253 feet in the remaining six seconds at an average speed of 28.75 miles per hour—a difference of over 21 miles per hour. The video simply does not reflect such a change in velocity.

8

Despite the court's lack of confidence in Officer Bovy's estimate, the court finds that Officer Bovy still had an objectively reasonable belief that Defendant was speeding. The court relies on the measurement taken by Debban in conjunction with Officer Bovy's dash-camera video in reaching this conclusion. Based on this measurement, Defendant was traveling an average of 35.8 miles per hour in a zone with a speed limit of 35 miles per hour. Because this was an average speed, Defendant likely traveled faster than 35.8 miles per hour at some point or points over the course of the nine seconds. While Officer Bovy may not have had probable cause to believe that Defendant's vehicle was traveling at 50 to 55 miles per hour, the distance the vehicle traveled combined with the time it took to cover that distance provides sufficient indicia of reliability to make it objectively reasonable for Officer Bovy to believe that Defendant was traveling faster than 35 miles per hour. Because Officer Bovy's belief that Defendant was speeding was objectively reasonable, the seizure was supported by probable cause and thus comports with the Fourth Amendment.

### B. Length of Vehicle Stop

Having determined that Officer Bovy had a lawful basis for the stop, the court turns to Defendant's argument that Judge Scoles erred in finding that the vehicle stop was not unduly prolonged. Specifically, Defendant contends that once Officer Bovy "determined that Defendant did not have any warrants out for his arrest, that Defendant was legal to drive, and that he had valid insurance and registration, the purpose of the stop was fully effectuated." Objections at 4-5. Defendant further argues that Judge Scoles improperly found that Officer Bovy "had a reasonable suspicion that other criminal activity may be afoot," which justified further detention. *Id.* at 5.

"A constitutionally permissible traffic stop can become unlawful . . . 'if it is prolonged beyond the time reasonably required to complete' its purpose." *United States v. Peralez*, 526 F.3d 1115, 1119 (8th Cir. 2008) (quoting *Illinois v. Caballes*, 543 U.S.

405, 407 (2005)). Whether the length of a traffic stop is reasonable depends on the specific facts of a case, "and there is no *per se* time limit on all traffic stops." *Id.* (quoting *United States v. Olivera-Mendez*, 484 F.3d 505, 510 (8th Cir. 2007)) (internal quotation marks omitted). Once an officer makes a valid traffic stop, the officer may lawfully ask "for the driver's license, the vehicle's registration, as well as inquir[e] about the occupants' destination, route, and purpose." *United States v. Mendoza*, 677 F.3d 822, 828 (8th Cir. 2012) (quoting *Sanchez*, 417 F.3d at 975) (internal quotation mark omitted). The officer may also "request that the driver sit inside the police car" while performing these routine tasks. *United States v. Pena-Ponce*, 588 F.3d 579, 583-84 (8th Cir. 2009) (citing *United States v. Brown*, 345 F.3d 574, 578 (8th Cir. 2003)). Additionally, when an officer "develops reasonable suspicion that other criminal activity is afoot, the officer may expand the scope of the encounter to address that suspicion." *Peralez*, 526 F.3d at 1120. Whether such reasonable suspicion exists depends on "the totality of the circumstances, in light of the officer's experience." *Sanchez*, 417 F.3d at 975 (quoting *United States v. Carrate*, 122 F.3d 666, 668 (8th Cir. 1997)) (internal quotations omitted). Among the circumstances the court looks to is whether the defendant appeared unduly nervous, whether the stop occurred in a high-crime area and whether the defendant gives conflicting answers about his or her itinerary. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (holding that "the fact that [a] stop occurred in a 'high crime area' [is] among the relevant contextual considerations in a *Terry* analysis"); *United States v. Riley*, 684 F.3d 758, 764 (8th Cir. 2012) ("[A]n inconsistent answer as to a traveler's destination and purpose 'casts suspicion and doubt on the nature and legitimacy of the activity being investigated.'") (quoting *United States v. Jones*, 269 F.3d 919, 928 (8th Cir. 2001)); *Jones*, 269 F.3d at 928 ("[E]xtreme and unusually nervous behavior observed in conjunction with only one or two other facts can generate reasonable suspicion that criminal activity is afoot.").

Here, upon lawfully stopping the vehicle, Officer Bovy was entitled to perform routine procedures such as determining whether Defendant was legally able to drive, whether he was properly insured and where he was going. Officer Bovy testified that in the course of these routine procedures, Defendant appeared nervous beyond what he normally observes during a routine traffic stop. Specifically, Officer Bovy testified that Defendant had a "hard time controlling his hands just to look through [a] stack of papers for his insurance card," and that he had "beads of sweat forming on his forehead, his voice [was] shaky, his hands [were] shaky, you [could] see his chest pounding through his T-shirt . . . [and] he [was] breathing heav[ily]." Hearing on Motion to Suppress Transcript at 14-15. In addition to these signs of nervousness, Officer Bovy also testified that Defendant gave inconsistent answers regarding his destination.

The court is cognizant that it is not "unusual for a motorist to exhibit signs of nervousness," *Jones*, 269 F.3d at 929 (quoting *United States v. Beek*, 140 F.3d 1129, 1139 (8th Cir. 1998)) (internal quotation marks omitted), that it should be "wary of the objective suspicion supplied by generic claims that a Defendant was nervous . . . after being confronted by law enforcement officials" and the court treats such generic claims "with caution" when "the government repeatedly relies on nervousness as a basis for reasonable suspicion." *Id*. (quoting *United States v. Barron-Cabrera*, 119 F.3d 1454, 1461 (10th Cir. 1997) and *United States v. Fernandez*, 18 F.3d 874, 879 (10th Cir. 1994)) (internal quotation marks omitted). However, Officer Bovy testified that Defendant was more nervous—he could not control his hands, had beads of sweat appear on his forehead, shaky hands, a shaky voice and his chest was pounding through his T-shirt—than he would expect someone who is pulled over for a traffic violation to be. *See United States v. Holleman*, No. 13-1317 __ F.3d __, __ (8th Cir. Feb. 27, 2014), http://media.ca8.uscourts.gov/opndir/14/02/131317P.pdf (holding that whether a defendant was "displaying nervous energy and . . . breathing heavily" was among the factors a court

looks to in determining whether a defendant was acting suspiciously). Officer Bovy also testified that the stop took place in an area in which a lot of criminal activity had recently taken place and that Defendant gave conflicting answers about his destination.[5] Defendant argues that Officer Bovy's testimony is questionable because it was not corroborated by any audio or video recording. However, such corroboration is not required to support a finding that Officer Bovy had reasonable suspicion that further criminal activity was afoot.[6] While such corroboration would ease the government's burden in proving that Officer Bovy had a reasonable suspicion that further criminal activity was afoot, the court is required to look at "the totality of the circumstances to determine, 'based on commonsense judgments and inferences about human behavior'" whether Officer Bovy had reasonable suspicion of further criminal activity. *United States v. Stringer*, 739 F.3d 391, 395 (8th Cir. 2014) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000)). The court finds that Defendant's unduly nervous demeanor combined with the high crime area in which the stop occurred and Defendant's inconsistent answers provided Officer Bovy with reasonable suspicion to expand the scope of the stop. Accordingly, the stop was not unduly prolonged.

---

[5] Defendant objects to this statement by noting that "there could easily have been a recording of what was said between [Officer] Bovy and Defendant, there is not, due to [Officer] Bovy's actions, or lack thereof . . . [and] Officer Bovy may not have completed his report regarding his contact with Defendant until 1-2 days after the incident." Objections at 1. Officer Bovy's testimony was not contradicted at the suppression hearing, and Judge Scoles apparently found his testimony to be credible. Moreover, there is no suggestion in the record that Officer Bovy intentionally disabled his microphone. After reviewing the record, including the transcript of the suppression hearing, the court finds no reason to disturb Judge Scoles's determination that Officer Bovy's testimony was credible.

[6] While it is the government's burden to show that an officer has reasonable suspicion, the record does not show that Officer Bovy purposely did not capture audio or video of the interaction.

### C. Pat-Down

Defendant next objects to Judge Scoles's conclusion that the pat-down search of Defendant was lawful. Specifically, Defendant argues that because Officer Bovy did not "have his hand on his gun, taser or mace[,] . . . did not take any precautions such as shielding himself[,] . . . turn[ed] his back on Defendant[,] . . . never called for backup, . . . never saw any bulges in Defendant's clothing . . . [and] received no information that Defendant had any history involving violence or weapons," Officer Bovy did not have a reasonable suspicion that Defendant could be armed and dangerous. Objections at 6. Defendant also argues that Officer Bovy exceeded the scope of a limited search for weapons because he was not "justified in thinking that the item he felt in Defendant's pants was a meth pipe." *Id.* at 7.

#### 1. *Reasonable suspicion that Defendant was armed and dangerous*

An officer conducting a traffic stop may pat down the driver and the passengers if the officer has reasonable suspicion that they could be armed and dangerous. *United States v. Oliver*, 550 F.3d 734, 737 (8th Cir. 2008); *see also Knowles v. Iowa*, 525 U.S. 113, 118 (1998). Whether an officer has reasonable suspicion "is assessed from the point of view of trained law enforcement officers based on the totality of the circumstances known to the officers at the relevant time." *United States v. Zamora-Lopez*, 685 F.3d 787, 790 (8th Cir. 2012); *see also Hollins*, 685 F.3d at 706 ("'The determination of whether probable cause,' or reasonable suspicion, 'existed is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time.'" (quoting *United States v. Sanders*, 196 F.3d 910, 913 (8th Cir. 1999))). "Although an officer's reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard . . . ." *United States v. Arvizu*, 534 U.S. 266, 274 (2002) (citation omitted) (internal quotation marks omitted).

"A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *Id.* at 277; *accord United States v. Stewart*, 631 F.3d 453, 457 (8th Cir. 2011).

The court finds that Officer Bovy's suspicion that Defendant was armed and dangerous was reasonable. Specifically, Officer Bovy testified that Defendant was abnormally nervous. Officer Bovy was also advised that Defendant had a previous conviction involving narcotics and that he was still involved in the narcotics trade. The stop occurred late at night (or early in the morning) in a high-crime area that was known for high drug traffic and violent crimes. In light of all these factors, Officer Bovy's suspicion that Defendant was armed was reasonable.

### 2. *Immediately apparent that object was contraband*

"A police officer 'lawfully pat[ting] down a suspect's outer clothing' may seize any 'object whose contour or mass makes its identity immediately apparent' as incriminating evidence." *United States v. Cowan*, 674 F.3d 947, 953 (8th Cir. 2012) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)). "[A]n item's incriminatory nature is immediately apparent if the officer at that moment had 'probable cause to associate the property with criminal activity . . . .'" *Id.* (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)).

Defendant argues that "just because an object is tube-shaped and has a ball shape at the end of it, that does not mean it is contraband." Objections at 7. Defendant is correct. However, an arresting officer need not definitively rule out innocent explanations for the way an object feels. Rather, if an officer has probable cause to associate the feel of the object with criminal activity, the officer is justified in seizing the contraband. *See Cowan*, 674 F.3d at 953 (holding that the government does not need to show "such a belief [to] be correct or more likely true than false" but only a "'practical, nontechnical' probability that incriminating evidence is involved is all that is required." (quoting *Brown*,

460 U.S. at 742)). Here, Officer Bovy testified that the "only object I have ever felt on a person that feels like that is a meth or crack pipe" and that he has seized such a pipe an estimated fifty times. Hearing on Motion to Suppress Transcript at 24. Thus, while the object that Officer Bovy felt was not *necessarily* contraband, Officer Bovy had probable cause to associate the object with criminal activity. Accordingly, Officer Bovy was entitled to seize the meth pipe.

## VI. CONCLUSION

In light of the foregoing, the court **HEREBY ORDERS**:

(1) The Objections (docket no. 42) are **OVERRULED**;

(2) The Report and Recommendation (docket no. 34) is **ADOPTED**; and

(3) The Motion (docket no. 21) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 27th day of February, 2014.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA